# Borough of North East v. Sunshine Packing Corporation of Pennsylvania

*James P. Bryan,* borough solicitor, for plaintiff.
*S. Y. Rossiter,* for defendant.

Evans, P. J., December 29, 1953.—Defendant in this case has filed preliminary objections to a complaint in assumpsit. Suit was brought to recover $6,220 claimed to be arrearages due from defendant for sewer rental under a Borough of North East ordinance of May 5, 1952. The intended use of this rental was for additional annual rent upon the use of the North East Borough sewer system for the disposal of industrial waste. It is contended that this

ordinance is illegal, unlawful, and without statutory basis or authority.

The ordinance in its preamble contains the statement that the officers of plaintiff, after careful deliberation and study, are of the opinion that the efficient disposal of industrial waste through the means of the existing North East Borough sewer system demands a construction of additional facilities, the required funds for which are not presently obtainable. In section 1 it is provided that an annual rental payable in monthly installments in addition to all present and subsequent water and sewer charges, rentals or rates, shall be charged for the disposal of industrial waste through the means of the North East Borough sewer system. Thereafter this ordinance sets forth a formula from which plaintiff arrived at the amount here claimed.

Section 7 provides that all rentals, charges and rates collected under the provisions of the ordinance shall be deposited by plaintiff in a fund, the name to be known and designated as "The Borough of North East Sewage System Construction Fund", and shall be used at the sole discretion of the members of borough council over a period of 20 years from the date of enactment for the administration of the ordinance and for the construction of additional facilities to the North East Borough sewer system reasonably necessary for the more efficient processing of industrial waste and sewage within said sewage system and for no other purpose or purposes whatsoever.

The limit placed upon the amount which was to be deposited in this construction fund was fixed at $30,000 per year, and it was further provided that the ultimate total in the construction fund should not exceed $600,000.

The ordinance in section 6, par. b, recites:

"All rentals, charges or rates herein provided, and not paid as herein provided, may be collected by authority of all laws made and provided therefor; and especially as provided in 'The Borough Code' as amended 1947 July 10, P. L. 1621 and its amendments thereto; and especially as provided by that certain Act of Assembly relative to Municipal Claims, 1923, May 16, P. L. 207, 1929 April 30, P. L. 902 as amended 1945, April 17, P. L. 238 and its amendments thereto."

Under these legislative enactments it appears clear that the charges here made, if equitable, may be levied and collected wherever a municipality finds it necessary to construct sewage facilities and incur indebtedness therefor. That authority exists when the municipality constructs its own sewage system or authorizes such construction through any legally constituted authority.

The right to enact by ordinance an annual rental either before or after construction is authorized for the reason that these charges may, under the legislation above recited, be pledged to secure any indebtedness necessary for the acquisition or construction of a sewage system. It does not, however, authorize the collection of funds for a project indefinite both as to extent and time of construction.

Plaintiff relies upon Gericke et al. v. Philadelphia et al., 353 Pa. 60, as authority for collecting and accumulating this rental charge before the facilities are available. In that case, however, at page 68, the court held:

"Certainly, if the service is not available for use by a property owner who should use it, he ought not be charged and we think council did not intend to charge him. A project of the magnitude contemplated, and necessary to satisfy the comprehensive requirements of the Commonwealth, cannot be completed overnight. There is no suggestion that a five-year

construction period is unreasonable, and it does not appear that the annual percentages chargeable during the period are not apportioned equitably. The present system, while urgently needing improvement, is available for use and in fact is in use by almost the entire city. More than 60% (the percentage payable in the first year) of the system which, when completed, will be represented by the bonded indebtedness then outstanding, is now in use. The ordinance implies that the improvements and additions will be made progressively and we must assume, for present purposes, that will be done."

From this we determine that it is not necessary that all rental provisions under a construction program be postponed until the entire project is completed. Nevertheless, some concrete and obligatory program must exist. Here plaintiff has not averred in its bill of complaint any contract or obligation to which these additional rentals have to be pledged or will be used. The fund to be accumulated is for purposes anticipatory and indefinite in every respect. During the 20-year period designated within which council may reasonably determine additional facilities, necessary, economic or other changes might make the construction unnecessary. Defendant might no longer be in business so as to gain the benefit from the large rental charges made in anticipation of estimated construction costs. Some future council might within the 20-year period determine or find it unnecessary to extend or enlarge its sewage system. To whom then and under what circumstances could this fund be legally allocated?

In Clark et al. v. Philadelphia et al., 328 Pa. 521, the court described a sinking fund as one " 'instituted and invested in such a manner that its gradual accumulations will enable it to meet and wipe out a debt at maturity'. . . . it is a fund 'specially earmarked

for the extinction of a debt'. . . . 'The object of every sinking fund is to diminish the debt whose existence warranted its foundation.' "

In our opinion, the ordinance is without legislative authority for its passage and does not have the legal standing to support the claim here made. Ordinarily when preliminary objections are sustained, an opportunity to amend is allowed. Such procedure under the facts in this case will serve no useful purpose.

And now, to wit, December 29, 1953, the preliminary objections filed March 30, 1953, are sustained and the action dismissed.